THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | Criminal No. 08-CR-264 (LEK) |
| | ) | |
| v. | ) | |
| | ) | |
| WALID OSMOND TURK, | ) | DEFENDANT'S SENTENCING |
| | ) | MEMORANDUM & OBJECTIONS |
| Defendant. | ) | TO PRESENTENCE INVESTIGATION |
| | ) | REPORT |

The defendant, Walid Turk, through undersign counsel, hereby files his sentencing memorandum requesting a variance of 10 months from the Guideline Range to a reasonable sentence of 60 months pursuant to 18 U.S.C. Section 3553 or a departure for justifiable reasons under U.S.S.G. Section 6B1.2(c)(2). The defendant further files his objections to the PSI. It should be noted that the objections do not affect the Guideline Range. As such a Hearing may not be necessary. Rule 32 (i)(3)(B), Federal Rules of Criminal Procedure.

I.   OBJECTIONS AND CLARIFICATIONS

1. On page 2: The alternate IDs "JVC LLC" and BobMohan@yahoo.com" should be deleted. These were not used by Turk. The company and email address is also mentioned in paragraph #31, Example Two of Federal Express' Victim Statement. Turk is not seeking the amount of money in that paragraph to reduce the loss amount stipulated to, nor is he seeking a reduction in restitution since that could unduly delay or lengthen the sentencing hearing.

2. Page 7, paragraph 18: Should be changed where it states Turk purchased genuine equipment "with stolen account information" to "with a sub-account to his credit card

1

he opened under a fictitious name." Turk's Modus Operandi on all transactions was that he opened sub-accounts under his account with fictitious names such as Tony Black. He did not steal credit cards or steal a person's identity. In support of this see Fed Ex statement in paragraph 29 on page 9. ("Turk opened these accounts with fictitious names…")

3. Page 8, Paragraph 23: The language "an unauthorized credit card was used to open account" and "purchased via a stolen credit card account" should be changed to "a credit card under a fictitious name opened under his credit card" since the PSI again refers to stealing people's credit cards. This is the use of the Tony Black sub-account. In support, please see affidavit of SA Mathew Peterson for the search warrant for Turk's Laptop on May 19th, 2008 at page 6 where it is recognized that Tony Black was an alias of Turk as well as the previous statement of Fed Ex at paragraph 29, infra.

II. **A SENTENCE THAT IS 10 MONTHS BELOW THE PRESENT RANGE IS WARRANTED UNDER 18 U.S.C. SECTION 3553(a).**

Following *Unites States v. Booker,* 543 U.S. 220 (2005), a district court is not required to impose a sentence within the Guideline Range. "Booker rendered the Guidelines 'effectively advisory,' and permitted sentencing courts to tailor the appropriate punishment to each offense in light of other concerns." *Unites States v. Cavera*, 550 F.3d 180, 187 (2d Cir. 2008) (quoting *Booker*, 543 U.S. at 245) (en banc), *cert. denied,* 129 S. Ct. 2735 (2009). In fact, a district court may not even "presume that a Guidelines sentence is reasonable; it must instead conduct its own independent review of the sentencing factors, aided by the arguments of the prosecution and the defense." *Id.* At 189.

In fashioning an appropriate sentence, sentencing courts have a "duty to impose a sentence that is sufficient ***but not greater than necessary*** to accomplish the purposes of sentencing as explained in

Section 3553." *Kimbrough v. United States*, 552 U.S. 85, 101 (2007) (noting that the overarching objective is to determine a sentence that is "sufficient, but not greater than necessary" to meet the ends of justice). To guide a sentencing court in applying this "parsimony principle," Section 3553 (a) sets forth a number of factors to take into account, including:

    (i)    The nature and circumstances of the offense

    (ii)    The need to avoid unwarranted sentence disparities

    (iii)    The history and characteristics of the defendant; and

    (iv)    The need for the sentence imposed to afford adequate deterrence to criminal conduct and to protect the public from further crimes of the defendant.

18 U.S.C. Section 3553(a)(1), (a)(2)(B)-(C), (a)(6).

The Second Circuit has made clear that these factors must be considered in "undertak[ing] an individualized assessment based on the facts presented." *United States v. Johnson*, 567 F.3d 40, 50 (2d Cir. 2009) (internal quotation marks omitted). A Guideline Departure prohibition does not preclude the District Court from considering that factor a ground for variance under Booker. *United States v. Lake*, 419 F. 3d 111(2d. Cir. 2005); *United States v. McBride*, 434 F. 3d. 670 (6th Cir. 2006) and a prohibited ground for departure may be a valid basis for a variance. *United States v. Chase*, 56 F. 3d. 828 (8th Cir. 2009)

    **A.**    <u>**THE HISTORY AND CHARACTERISTICS OF THE DEFENDANT WARRANT A SENTENCE OF SIXTY MONTHS AND ILLUSTRATES LITTLE NEED TO PROTECT THE PUBLIC FROM FUTURE CRIMES**</u>

    1.    **TURK'S VOLUNTARY CESSATION OF CRIMINAL CONDUCT.** Approximately January 2008 Turk voluntarily stopped selling the counterfeit equipment on E-bay even though he had numerous items at two warehouses that were eventually seized pursuant to a search warrant in May 2008. See *Gall v. United States* 128 S.ct. 589 (Voluntary with-drawal and post offense conduct indicate that Gall would not return to criminal behavior and was not a danger to society.)

2. **THE UNIQUE FACTUAL CIRCUMSTANCES OF TURK'S VOLUNTARY SURRENDER**. Turk's surrender is a rare example of extraordinary level of acceptance of responsibility once a ground for Downward Departure (see *United States v. Rodgers* 972 F.2d 489 (2nd Cir. 1992) and presently grounds under which the court can consider fashioning a reasonable sentence below that of the guidelines.

   Both Turk's voluntarily cessation and Turk's subsequent surrender are indicative of the lessened need to fashion a sentence to protect the public from future crimes of the Defendant. The Defendant adopts the argument of the government and adds to their facts that Turk retained New York counsel in early 2009 to arrange a surrender. Sadly his New York counsel died on January 23, 2010. Turk did not discover the death until a March 8, 2010 response to his email inquiring as the status of his case. He subsequently negotiated his surrender through undersigned counsel, accepted responsibility by his plea and sentencing.

3. **TURK'S POST-OFFENSE, PRE-SURRENDER REHABILITATION.** Based on the unfortunate death of his first counsel and the delay in negotiating a surrender we have a view of Turk's approximately six (6) years of non-criminal life and community assistance in Jordan as evidenced by the numerous letters written on his behalf.

   Post-offense rehabilitation is a basis for a downward variance (see *Gall v. United States* 552 U.S. 38 (2007)); (variance to probation from 30 months incarceration for 5 years law abiding life after withdrawal from crime.) *Pepper v. United States* 131 S.Ct. 1229 (2011) (post sentencing rehabilitative evidence may be highly relevant to several section 3553(a) factors and provide the most up to date picture of the Defendant's history and characteristics and the likelihood of engaging in future criminal conduct.)

   As stated by Justice Sotomayor in Pepper, Supra:

   > "it has been uniform and constant in the federal judicial tradition for the sentencing judge to consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue."
   > *Koon v. United States*, 518 U.S. 81, 113 (1996). Underlying this tradition

4

> is the principle that "the punishment should fit the offender and not merely the crime" *Williams,* 337 U.S., at 247: see also *Pennsylvania ex rel. Sullivan* v. *Ashe,* 302 U.S. 51, 55 (1937) ("For the determination of sentences, justice generally requires consideration of more than the particular acts by which the crime was committed and that there be taken into account the circumstances of the offense together with the character and propensities of the offender").
> Consistent with the principle, we have observed that "both before and since the American colonies became a nation, courts in this country and in England practiced a policy under which a sentencing judge could exercise a wide discretion in the sources and types of evidence used to assist him in determining the kind and extent of punishment to be imposed within limits fixed by law." *Williams,* 337 U.S., at 246. In particular, we have emphasized that "[h]ighly relevant- if not essential – to [the] selection of an appropriate sentence is the possession of the fullest information possible concerning the defendant's.
> Life and characteristics " *Id.*, at 247. Permitting sentencing courts to consider the widest possible breadth of information about a defendant "ensures that the punishment will suit not merely the offense but the individual defendant" *Wasman v. United States* 468 U.S. 559, 564 (1984).

Turk is not a wealthy philanthropist supporting large charities. He is one individual who aided, hands on, poor individuals he encountered in a culture where the poor are ignored. An excerpt of some of the letters filed illustrates the Defendant as he is now before the Court:

> An old man was picking through a dumpster for something to eat. It was hot and humid day in mid-July, we were in Lebanon and of course most of the time the power is out. I saw Walid climb four flights of stairs to get this man a clean meal from our fridge and back down. The man threw his arms up to the sky and he started praying for Walid's wellbeing. I asked him why he went through the trouble rather than pass him a few dollars, that's what I would have done; Walid explained clearly this man isn't a beggar he was only hungry, offering him a few dollars is offensive it would be like putting a price on his dignity." -Yasmeen Turk, Doc. 25-1

***

> "Last winter he took me to the doctor because I couldn't afford to go on my own then when the doctor said that I need antibiotics Walid went to the pharmacy and bought me a pack and he also shared his cough medicine." – Mahmoud Salam, Doc. 28-3

***

> "I am (a) cleaning janitor in the commercial building where Walid works. I make extra money by washing the neighborhood cars. Walid is a kind and generous person. Walid always makes sure I'm warm in the harsh winter and he buys me groceries and he also leaves me a leg of lamb. On my salary I can't afford to buy meat." – Jalal Shehata, Doc 25-3.

\*\*\*

"He used to say it takes no additional effort to feed 5 mouths instead of 4, he would make sure an extra portion is packaged on our Friday family lunches either for the garbage man to eat the next day or the sheep herder or the car washer, there is never a shortage of people to feed around here. Walid would go out of his way to do simple good deeds if he didn't have money to give he would offer to wash their laundry, as odd as that may sound he actually did that on a regular basis. He justified it by saying the washing machine is cleaning anyways why not add a few more pieces. Walid is down to earth and could not comprehend the different social classes that we are governed by. He blurred all the segregation lines and he only saw people as a whole." – Nafith Assaf, Doc 25-4.

\*\*\*

"The building maintenance staff in Jordan usually lives in an underground garage in a very small room with no windows, it is extremely cold down there and the owners don't provide adequate heat. Walid went out of his way in the middle of his busy day to go buy portable heaters to give them so they can stay warm. In that society, that is unheard of. Walids U.S. mentality has kept him down to earth and treated everyone as equals." – Faris Rilans, Doc 25-8.

\*\*\*

"I have met Walid through Yasmin Assaf, where we both volunteered at a place called Family Kitchen. Family Kitchen is a nonprofit humanitarian or organization that helps distribute food to less fortunate people throughout Jordan by putting together food packages donated by companies, and re-packaging unused, clean food from hotels and restaurants." – Qussay Asad, Doc 25-2

\*\*\*

These letters are not from bank presidents nor politicians. They are from the individuals he helped or from those who witnessed his actions. They tell a story of who Walid is presently before the court. An individual who "in the past four years has come to an understanding of himself" – Nadia Turk (his mother) Doc. 28-1

\*\*\*

4. **TURK ATTEMPTED COOPERATION.** Turk was extensively debriefed as to the Chinese as well as edifying on how he accomplished so easy the fraud to Fed Ex. There was no agreement with the government for any benefit and his information did not trigger a 5K1.1 motion.

6

A sentencing court has the power to consider a Defendant's cooperation under 3553(a) irrespective if the government files 5K1.1 motion. United States v. Fernandez 443 F. 3d.19 (2d Cir. 2006), abrogated on other grounds by *Rita v. United States* 557 U.S. 338 (2007).

This is another example of the character of the Defendant in his steps toward rehabilitation.

### III. TWO (2) POINT ENHANCEMENT FOR IMPORTATION OVER REPRESENTS HIS CRIMINAL CONDUCT

The Guidelines require a 2 point enhancement for importation since Walid Turk ordered the items from China. However there are degrees of gravamen as to this enhancement. The individuals in China controlled and were the actual importers and are more criminally culpable by direct actions than the U.S. buyer who orders from overseas causing indirectly the importation. It is respectfully requested that a one point adjustment pursuant to this argument brings the Defendant to within 3 months of the agreed upon sentence.

It is submitted that both individually as well as the totality of the factors under 18 U.S.C 3553 support a reasonable sentence of 60 months.

Respectfully submitted,

/s/ Gregory C. Denaro_____

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that true and correct copy of the foregoing was delivered via CM/ECF this 27th day of October, 2014, to Edward Broton, Assistant United States Attorney and by email to Joan Fahey.

/s/ Gregory C. Denaro
GREGORY C. DENARO, ESQ.
2701S. Bayshore Dr., #605
Coconut Grove, Florida 33133
(305) 858-3221
gdenaro@bellsouth.net
Florida Bar No. 274097